Filed 11/30/23  P. v. Thomas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PAUL FRANCIS THOMAS,<br><br>    Defendant and Appellant. | D080668<br><br><br>(Super. Ct. No. CRN6769) |

APPEAL from an order of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Erica A. Swenson, and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Paul Francis Thomas appeals from an order of the trial court denying his request for resentencing pursuant to Penal Code section 1170.95, now

section 1172.6, following an evidentiary hearing.[1] Thomas asserts that there was not substantial evidence to support the trial court's finding beyond a reasonable doubt that he was guilty of murder under the current law. In doing so, Thomas asks us to reweigh the evidence. We decline to do so and affirm the trial court's order.

## I. PROCEDURAL AND FACTUAL BACKGROUND

A jury convicted Thomas and a co-defendant, George Albert Fredericks, of robbery and first-degree murder in September 1981. The jury also found that Thomas and Fredericks were each armed with a firearm in the commission of the crimes of robbery and murder. The trial court sentenced Thomas to 25 years to life in prison for the murder, plus one year for the firearm allegation. This court confirmed the conviction in an unpublished opinion. (*People v. George Albert Fredericks and Paul Francis Thomas* (Aug. 13, 1983, 4 Crim. No. 13574 [nonpub. opn.] (*Thomas I*).)

## A. *The Underlying Crime and Trial*

The facts of the underlying crime were set forth in *Thomas I*,[2] and repeated more recently in *People v. Thomas* (Dec. 8, 2020, D077117) [nonpub. opn.] (*Thomas II*). We summarize them here briefly. The victim, Roper, was

---

[1] All further statutory references are to the Penal Code. Assembly Bill No. 200 (Stats. 2022, ch. 58, § 10) was renumbered from section 1170.95 to section 1172.6, effective June 30, 2022. We cite to the current statute herein.

[2] We note that the trial court appropriately sustained an objection to receiving the "Statement of Facts" as set forth in *Thomas I* into evidence at the evidentiary hearing. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 292 ["[T]he Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing."]; accord, *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9; *People v. Langi* (2022) 73 Cal.App.5th 972, 979–980.) Like the trial court, we have reviewed and rely on the transcripts from the original trial.

a drug supplier.  In December 1980, Fredericks owed Roper $3,000.  Fredericks repaid half the amount, but Roper demanded the rest and threatened Fredericks.  Fredericks was supposed to repay the remaining amount on Christmas Eve, December 24, 1980.  Fredericks asked Thomas to accompany him to the meeting with Roper and to bring his gun.  They discussed a plan to rob and kill Roper with a third individual, Mike Johnson.

Fredericks and Thomas met at a bar at around 11:30 p.m. on Christmas Eve.  They borrowed a friend's truck and drove to a restaurant.  Fredericks called Roper's residence several times.  He spoke to Roper's mother and left the number for the restaurant with her.  Roper returned home around 1:00 a.m., called the restaurant and then left a few minutes later.  Fredericks, Thomas, and Roper met at a convenience store.  Fredericks and Thomas told Roper to get into their vehicle and drove him to a remote location, where Roper was ultimately shot and killed.

In a pretrial admission to a police officer, Thomas said that Fredericks shot Roper during a gun battle.  Thomas stated, further, that he was worried that his fingerprints were on the casings to the bullets, since Fredericks used his gun, which Thomas had loaded, so he and Fredericks returned to the scene of the shooting and attempted to retrieve the casings.  In a separate pretrial admission to Johnson, Fredericks said that he wanted to back out of the plan but Thomas insisted on going through with it, and that Thomas shot Roper after Roper fired a couple of shots.

Both men told a different story at trial.  In his testimony, Thomas admitted going with Fredericks on the evening of December 24, 1980, and taking his gun.  He said that Fredericks told him he was going to meet up with a guy that had roughed him up before and just wanted to be sure there was no trouble.  They went to the restaurant and waited a long time but then

3

Fredericks told Thomas he was no longer needed. Fredericks took Thomas's gun and left. Thomas sat in the truck and waited. When Fredericks returned, he was upset and looked like he had been slapped around. He did not return Thomas's gun.

Fredericks testified that he left Thomas in the truck and walked across the street to meet Roper at the convenience store but was intercepted by a man with a gun. The man took Thomas's gun from Fredericks and instructed him to get into a van. There were two other men in the van and they threatened Fredericks and then instructed him to leave.

Johnson testified regarding his conversations with Thomas and Fredericks both before and after the murder. He testified that he discussed the plan with both Thomas and Fredericks sometime around December 22. They discussed the fact that Fredericks planned to meet with Roper on December 24, that Roper was supposed to bring an ounce of cocaine with him, and that Thomas would get the cocaine as "payment for his part in the killing." In the days after the killing, Fredericks told Johnson that Roper did not have the cocaine on him when they met, that he initially wanted to back out of the plan, but that Thomas convinced him to go forward with the killing, and that he agreed to pay Thomas $2400 (instead of the cocaine) for his part in the killing. Johnson also said that he spoke with Thomas, who relayed a similar story. Thomas wanted to know what was happening with Fredericks and how Fredericks intended to pay him the $2400 he was owed. According to Johnson, Thomas said that "he felt he should get the $2400 [because] he was the one that actually did the killing."

Another witness testified at trial that she was with Thomas the morning after the shooting. She said that Thomas threw his gun into a

4

lagoon and threw a box of bullets into the ocean. Thomas told her that Roper shot at Fredericks and Fredericks shot Roper.

## B. *Thomas's Request for Resentencing*

In October 2019, Thomas filed a petition for resentencing pursuant to section 1172.6. The trial court initially concluded that Thomas was not eligible for resentencing as a matter of law based on the facts presented in *Thomas I*, and therefore denied the petition at the prima facie stage. Thomas appealed and this court reversed the trial court's decision, concluding that its prior opinion in *Thomas I* was not sufficient to resolve the issue as a matter of law because it did not consider whether Thomas was an active participant in the killing. (See *Thomas II, supra,* D077117.)

After the remittitur issued, Thomas filed a second petition for resentencing pursuant to section 1172.6. In response, the People conceded that Thomas was entitled to an evidentiary hearing to determine whether he was entitled to relief under section 1172.6. The trial court agreed and the parties submitted extensive briefing and evidence in advance of the April 26, 2022 evidentiary hearing.

## C. *The Evidentiary Hearing*

Fredericks testified at the evidentiary hearing. He said that he met Roper on the evening of December 24, 1980, and that Thomas was with him. Fredericks owed Roper approximately $1,500 and Roper had gone to Fredericks' house with another man to intimidate him a few weeks prior, so Fredericks wanted someone else with him on December 24 for protection. Roper was supposed to bring Fredericks some cocaine that he could sell to pay off his debt. They drove out to a remote location and Fredericks got out of the truck to talk with Roper. Fredericks took out a gun that he had

5

borrowed from Thomas to intimidate Roper, Roper made a movement, and Fredericks shot Roper.

Fredericks said that Thomas only got out of the truck after he shot Roper and denied that the two had planned to rob or kill Roper. He admitted that he agreed to pay Thomas $100 for his assistance, and that he "probably" told Thomas that he owed Roper a drug debt. Fredericks admitted that he and Thomas made up the story they told at trial to "try to beat this thing." He also stated that he had been paroled in 2013, after admitting that he was the perpetrator of the murder.

Thomas did not testify on his own behalf or present any other witnesses. The court acknowledged that the People had lodged the preliminary hearing transcript, the trial transcript, the clerk's record, and a transcript from a parole board hearing in March 2016, during which Thomas claimed that he was the actual shooter. In addition, Thomas submitted transcripts from a parole board hearing from October 2012 in which Fredericks admitted being the shooter. The trial court noted that it had reviewed the materials and, in particular, had reviewed and was relying on the original trial transcripts.

At the conclusion of the hearing, the People conceded that the evidence did not firmly establish whether Fredericks or Thomas was the actual shooter. However, the People argued, the evidence did establish beyond a reasonable doubt that Thomas was an active participant who acted with reckless indifference, such that he would still be guilty of murder under the current state of the law. In response, defense counsel relied heavily on Frederickson's testimony to assert that Thomas was an "unwilling accomplice," and not a major participant.

6

The trial court took the matter under submission and issued a written decision the next day. The court concluded that the evidence proved beyond a reasonable doubt that Thomas was a direct aider and abettor, and a major participant that acted with reckless indifference towards human life. Accordingly, he was ineligible for resentencing pursuant to section 1172.6. Accordingly, the trial court denied the petition.

Thomas filed a timely notice of appeal.

## II.    DISCUSSION

On appeal, Thomas asserts there is not substantial evidence in the record to support the trial court's factual findings or its conclusion that he was either a direct aider and abettor or major participant that acted with reckless indifference towards human life.

### A.    *Relevant Legal Principles and Standard of Review*

In 2018, the Legislature "made significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory." (*People v. Strong* (2022) 13 Cal.5th 698, 707 (*Strong*).) "As relevant here, Senate Bill 1437 significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Strong*, at pp. 707–708.)

Section 1172.6 now permits defendants "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to file a petition requesting that their

conviction be vacated on the grounds that they "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) If the defendant makes the requisite prima facie showing that he or she is entitled to relief, the trial court shall issue an order to show cause why the relief should not be granted and shall hold an evidentiary hearing to determine whether to vacate the conviction at issue and resentence the defendant on any remaining counts. (*Id.*, subds. (c), (d)(1).)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

Where, as here, the trial court finds that the prosecution has met its burden to prove beyond a reasonable doubt that the defendant could have

8

been convicted under the current law, we review the trial court's factual findings for substantial evidence and review the court's application of those facts de novo. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1017 (*Henley*); *People v. Wilson* (2023) 90 Cal.App.5th 903, 917 (*Wilson*).) We review the record in the light most favorable to the judgment. (*Henley, supra,* at p. 1017.) We do not reweigh the evidence or make credibility determinations on appeal. (*Wilson, supra,* at p. 917.) Our task is simply to decide whether there is sufficient evidence of reasonable, credible, and solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Henley, supra,* at p. 1017.)

**B.   *Analysis***

### 1. The Trial Court's Findings Are Supported by Substantial Evidence

In its written statement of decision, the trial court found: "The evidence received proves beyond a reasonable doubt that [Thomas] was a direct aider and abettor of the murder in this case. He participated in the planning of the murder in a pre-offense meeting with the co-defendant, he was present during the entire incident when the victim was shot, based on his own statements he either personally shot the victim or provided the weapon used to shoot the victim, he cleaned up evidence (casings) at the scene of the shooting, and he disposed of the weapon and ammunition immediately after the murder. In the days following the murder [Thomas] was still attempting to get paid for having killed the victim." Upon our own review of the record, we conclude that the trial court's findings are supported by substantial evidence.

Thomas asserts that Fredericks testified that he was the only person who intended to shoot and did shoot Roper. But the prosecution never argued that Thomas was the shooter; rather, the prosecutor argued that Thomas was

a direct aider and abettor who acted with reckless indifference to human life. As Thomas concedes, Fredericks also testified that Thomas lent him the gun that he ultimately used to shoot Roper, and that Thomas knew he "needed somebody to watch [his] back while [he] met this guy that [he] owed money to."

The trial court also admitted the trial transcripts, in which Johnson said that he was with Thomas and Fredericks when the two of them discussed a plan to kill Roper. Specifically, Johnson testified that Fredericks "came over to the house to tell me that he had made arrangements with Mr. Thomas to meet Lon Roper and to kill him." Fredericks and Johnson then went to Fredericks's house and continued this conversation with Thomas. They discussed the fact that "they had made arrangements to meet with Mr. Roper on the night of the 24th of December and that Mr. Roper was supposed to bring with him an ounce of cocaine which was supposed to be Mr. Thomas'[s] payment for his part in the killing."

Thomas asserts that Johnson's testimony was not credible, but as the trial court noted, as the trier of fact, it had to assess the credibility of the witnesses. (See *People v. Pittman* (2023) 96 Cal.App.5th 400, 414 ["the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility"].) It is apparent from the trial court's comments on the record and its written statement of decision that it found Johnson credible. The trial court expressly noted that the evidence showed that Thomas "participated in the planning of the murder in a pre-offense meeting with the co-defendant." We are not permitted to undermine the trial court's credibility finding on appeal. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 346, fn. 7 ["we must uphold the trial court's credibility findings, both express and or implied, if substantial evidence

10

supports them"]; *People v. Oliver* (2023) 90 Cal.App.5th 466, 482 (*Oliver*) ["Under our substantial evidence standard of review, we defer to the trial court's implicit credibility findings and accept all reasonable inferences from the evidence"].)

Finally, Thomas also asserts that there was no evidence in the record to support the trial court's conclusion that Thomas continued to attempt to get paid for his involvement in the days following the murder. To the contrary, Johnson testified that he spoke with Thomas in the days after Christmas, that Thomas kept asking him how Fredericks was going to provide the $2400 that he believed Fredericks owed him for going through with the murder. Again, we defer to the trial court's credibility and factual findings, so long as there is credible evidence to support them. (*Oliver, supra,* 90 Cal.App.5th at p. 482.)

Thomas does not directly contest the sufficiency of the evidence supporting the remaining factual findings set forth in the trial court's statement of decision.

**2. The Trial Court's Findings Support Its Conclusion That Thomas Was a Major Participant Who Acted With Reckless Indifference**

Beyond disputing whether the evidence supports the trial court's factual findings, Thomas also asserts that the trial court did not adequately consider whether those findings were sufficient to support the conclusion that Thomas was a major participant that acted with reckless indifference, such that he would still be guilty of murder under current law. We disagree.

The California Supreme Court provided substantial guidance on the meanings of the phrases "major participant" and "with reckless indifference to human life" in two seminal cases, *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). In *Banks*, the

11

Court clarified that the following questions are relevant when determining whether the defendant was a major participant: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.) And in *Clark*, the Court likewise clarified that when determining whether a defendant acted with reckless indifference to human life, the trier of fact could consider, among other relevant factors, whether the defendant knew that a gun would be used during the felony, whether the defendant was present at the crime and had the opportunity to restrain the crime or aid the victim, and the defendant's knowledge of his or her confederate's propensity for violence. (*Clark, supra*, 63 Cal.4th at pp. 618–623.)

Thomas asserts that the trial court did not expressly consider these factors in its oral or written ruling, but its stated factual findings directly address a number of the relevant factors set forth in *Banks* and *Clark*. We presume that the trial court knew and properly applied the law. (See *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) Moreover, the trial court did expressly find that Thomas was a *direct* aider and abettor. To be a direct aider and abettor, Thomas had to have the same mental state of the direct perpetrator, meaning that, if he was not the actual perpetrator, he at least knew of and shared the murderous intent of the actual perpetrator. (See

*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)  That finding alone was sufficient to support the conviction, and the trial court's finding that Thomas was not entitled to relief pursuant to section 1172.6.  Regardless though, considering that finding along with the trial court's stated factual findings, and in light of our high court's guidance in *Banks* and *Clark*, we conclude that the evidence presented at the evidentiary hearing supported the trial court's conclusion that Thomas was a major participant who acted with reckless indifference to human life.

### III.   DISPOSITION

The trial court's order denying the petition for resentencing under section 1172.6 is affirmed.

KELETY, J.

WE CONCUR:

BUCHANAN, Acting P. J.

CASTILLO, J.

13